Mr. Justice Thaohee
delivered the opinion of the court.
This was a petition in the probate court of Amite county, filed by wards against their guardian to compel him to account, and for a revocation of his letters of guardianship. The petition sets forth that the grandfather of the wards had devised certain slaves to their mother and to her children after her death; that the complainants are the only surviving children of the mother, who died in 1S34; that the defendant, who is the father of the complainants, obtained letters of guardianship over the wards in February, 1838; that the slaves had been and remained in the hands of the defendant since the death of their mother,- and that the defendant, from his character, habits, and conduct, was unfit to be entrusted with their guardianship. The petition, besides a prayer for specific relief in the premises, contains a prayer for such relief as the nature of the case may require. The probate court, upon bill, answer and depositions, decreed the dismissal of the complainants’ bill, and hence the cause is here upon a writ of error.
Upon a close examination of the evidence disclosed in the record, this court can see nothing to warrant it in disturbing the decree below so far as the charge of the unfitness of the defendant to discharge the duties of a guardian are concerned. The serious charges of the complainants in their petition are *750 explicitly denied in the defendant’s answer, and there is a failure in the attempt to support them by evidence.
But upon the subject of the prayer for an account, this court is inclined to a different conclusion from that arrived at by the probate court. It is the duty of the guardian once in every year at least, to exhibit to the probate court an account of the product of the estate of the ward. H. & H. 337, § 7. The petition in the present case operates to summon the guardian into court to render his account, and it is upon his answer to that petition that he seeks to be relieved from rendering an account. The ground upon which he depends from being compelled to account is that there is no indebtedness between him and his wards, and this it is that constitutes the real inquiry in the cause.
The record shows that upon the 28th day of May, 1838, the defendant delivered into the probate court his inventory of all the estate of complainants, consisting of the following slaves, to wit; Chancy, aged twenty-seven years, valued at $1200; John, eleven years, valued at $600; Dorcas, six years, valued at $450; Malsa, four years, valued at $400 ; and Ann, nine months, valued at $250. At the June term, 1842, the defendant made a report to the probate court, in which he states that since the May term, 1838,-the services of the slaves had been about equivalent to the expense of the support of the younger slaves, and of the maintenance of the wards. This is an admission of the defendant that for a period of a little more than four years, the product of the slaves of the complainants had been equal to the expense, of the maintenance of the complainants, as well as for the support of the younger children of the slave Chancy. The evidence contained in the depositions upon the subject of the yearly value of the family of slaves, although to some extent contradictory, shows sufficiently that their value was greater than the expense of their keeping. John Ballard, witness for complainants, testifies that Chancy and another slave not the property of complainants, were worth $140 per year in 1842, and John $75 per year, but he testifies that in the years 1838,1839,1840, and 1841, Chancy and her children could *751 not have been hired for move than their support, clothing, medical bills and taxes. William Jones, another witness for complainants, testifies that the boy John was worth $80 per year in 1842. William H. Spillman, another witness for complainants, testifies that Chancy was worth $100 per year from the year 1834 to 1842, and that John was worth $48 per annum in 1837, and in the years 1838,1839,1840 and 1841, $60 per annum. Samuel B'. Moore, another witness for complainants, testifies that Chancy and her children, from 1834 to 1842, would net in value $30 or $40 per annum, and that the defendant acknowledged to him that in 1839 John was worth $12 per month. He testified also, that in 1838 John was worth $40, in 1840 $50, in 1841 $60, and 1842 $80. Elijah Baxter, a witness for the defendant, testifies that Chancy and children were not worth more than the cost of their support, &c. in 1836 and the two previous years. John C. Anderson, a witness for the defendant, testified that upon an average, John was worth $50 per annum from 1835 to 1842, and that during that time, the family of slaves, with the exception of Johp and Chancy was an expense rather than profit. Mrs. Eliza Cox, a witness of defendant testifies that Chancy was the principal cook in the hotel establishment of the defendant. Dr. T. G. Cowden, a witness of defendant, testifies that the defendant paid him $24 for medical attendance upon the slaves in 1841. He testifies that Chancy is a valuable servant. The testimony of Dr. O. W. Caulfield, a witness for the defendant, upon an analysis, shows that the defendant paid him from the year 1835 to 1841 for medical attendance upon the slaves an average of not quite $21 per annum. The foregoing extracts from the depositions of the witnesses contain the chief evidence respecting the annual value or product of the slaves, and upon a review of it, it is obvious that the position assumed by the defendant that no indebtedness in point of fact exists from him to his wards is not substantiated. It may be observed here, also, that the principle that holds in chancery that an account will not be decreed except upon an apparent indebtedness, does not apply in a case of this kind in the probate court. The statute makes it the duty of a guardian to render an annual account.
*752 We are inclined therefore to hold, in this case, that under the prayer of the complainants for such further relief as the nature of the case may require, and upon the law and the evidence, the probate court should have decreed an account- against the defendant from the time of his grant of letters of guardianship. The statement filed by the defendant at the June term, 1842, of the probate court, can be received merely as a bare statement, and not such a report as is required by the statute.
The decree of the probate court is therefore reversed, and the cause remanded to that court with directions that the petition and cause be there re-instated,. and an account decreed as above.